THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>RICARDO BARRAZA VIZCARRA,<br><br>               Defendant. | CASE NO. CR20-0136-JCC-7<br><br>ORDER |

This matter comes before the Court on the Government's motion to revoke United States Magistrate Judge Michelle Peterson's order releasing Ricardo Barraza Vizcarra before trial (Dkt. No. 96). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

## I.  BACKGROUND

On September 1, 2020, the Government seized approximately 30 pounds of methamphetamine, two pounds of heroin, one-half pound of counterfeit oxycodone pills allegedly containing fentanyl, and over $50,000 in cash from Mr. Vizcarra's residence. (*See* Dkt. No. 96 at 1, 7–8.) About a week later, a grand jury indicted Mr. Vizcarra for possession of methamphetamine, heroin, and fentanyl with intent to distribute. (*See* Dkt. No. 72 at 6–7.)

After Mr. Vizcarra was arrested, the Government moved to detain him before trial. (*See* Dkt. Nos. 3–4.) Mr. Vizcarra argued that he should be released, and the Probation Office agreed.

(*See* Dkt. Nos. 4–5.) Judge Peterson held a detention hearing and ordered Mr. Vizcarra released subject to special conditions, including that he surrender his identification documents to the Government, that the Probation Office actively monitor his location by GPS, and that he reside at his employer's residence rather than at his residence (where a small child resides and where the drugs were found). (*See* Dkt. Nos. 11, 91 at 2.)

Two weeks after that order, Mr. Vizcarra moved to modify his conditions of release because he learned that there were small children living at his employer's residence. (*See* Dkt. No. 91.) Accordingly, Mr. Vizcarra requested permission to live with a former coworker who does not have children. (*See id.*) Judge Peterson held a second evidentiary hearing at which she again ordered Mr. Vizcarra released and concluded, based on the Probation Office's interview with the former coworker, that the former coworker's home is a suitable residence for Mr. Vizcarra. (*See* Dkt. Nos. 95, 96 at 17–18.)

The Government now moves to revoke that order because it alleges that Mr. Vizcarra is a danger to the community and there is an "overwhelming" risk that he will flee. (Dkt. No. 96 at 17.) In addition, the Government specifically objects to Judge Peterson's decision to release Mr. Vizcarra to his former coworker's residence without the former coworker being present at the hearing. (*Id.* at 17–18.) The Government argues that Judge Peterson was required to personally examine the former coworker—or at least allow the Government to do so—to determine whether his home is a suitable residence for Mr. Vizcarra. (*Id.*)

In response, Mr. Vizcarra argues that he should not be detained because he is a United States citizen, has family in the United States, has no criminal history, and is employed. (*See generally* Dkt. No. 98.) Mr. Vizcarra's response does not address whether Judge Peterson was entitled to rely on the Probation Office's interview with Mr. Vizcarra's former coworker in analyzing the suitability of the residence.

//

//

## II.     DISCUSSION

### A.     Standard of Review

The Court reviews a magistrate judge's order releasing a defendant before trial *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). Thus, the Court makes its own factual findings and reaches an independent conclusion about whether the defendant should be detained, without deference to the magistrate judge's decision. *Id.* Where, as here, the magistrate judge holds an evidentiary hearing, the Court may hold another evidentiary hearing at its discretion but is not required to do so. *See id.*; *see also United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019).

### B.     Legal Standard for Detention

A defendant may be detained before trial only if "no condition or combination of conditions will reasonably assure the [defendant's] appearance . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Government bears the burden of proving by a preponderance of the evidence that no conditions will reasonably assure the defendant's appearance and by clear and convincing evidence that no conditions will reasonably assure the safety of the community. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). When analyzing whether conditions can reasonably assure the defendant's appearance and the safety of the community, the Court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the danger to the community the defendant would pose if released. 18 U.S.C. § 3142(g).

If the Court finds probable cause to believe the defendant committed a drug offense with a maximum term of imprisonment of at least ten years, there is a rebuttable presumption the defendant should be detained. *See* 18 U.S.C. § 3142(e)(3)(A). This presumption "shifts a burden of production to the defendant," *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008), which requires the defendant to produce "some evidence" that there are conditions that would

1   reasonably assure his or her appearance and the community's safety, *United States v. Jessup*, 757

2   F.2d 378, 384 (1st Cir. 1985). "The burden of production is not a heavy one to meet" and "[a]ny

3   evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the

4   operation of . . . the presumption[]." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.

5   1986). Once the defendant produces some evidence to rebut the presumption, "the presumption

6   'remains in the case as an evidentiary finding militating against release, to be weighed along with

7   other evidence relevant to factors listed in § 3142(g).'" *Hir*, 517 F.3d at 1086 (quoting

8   *Dominguez*, 783 F.2d at 707). Ultimately, "the burden of persuasion remains with the

9   government." *Id.*

10          **C.      Presumption of Detention**

11          A grand jury indicted Mr. Vizcarra for possessing methamphetamine, heroin, and

12   fentanyl with intent to distribute in quantities sufficient to trigger a mandatory minimum

13   sentence of at least ten years. (*See* Dkt. No. 72 at 6–7.) Based on the indictment, the Court finds

14   probable cause to believe the defendant committed the offense, and the presumption of detention

15   applies. *See Dominguez*, 783 F.2d at 706 n.7. As discussed above, Mr. Vizcarra has presented

16   "some evidence" favorable to him relevant to the § 3142(g) factors. Thus, Mr. Vizcarra has met

17   his burden of production to rebut the presumption of detention, but the Court will still weigh the

18   presumption along with the Section 3142(g) factors in determining whether Mr. Vizcarra should

19   be released.

20          **D.      Danger to the Community**

21          The Government argues that Mr. Vizcarra is "an ongoing danger to the community

22   because of his history of trafficking drugs." (*See* Dkt. No 96 at 15.) But Mr. Vizcarra may not be

23   detained "based on evidence that he has been a danger in the past;" his past conduct is relevant

24   only to the extent it suggests he will endanger the community in the future. *Dominguez*, 783 F.2d

25   at 707. The Government does not argue that Mr. Vizcarra is likely to resume trafficking drugs

26   while on pretrial release, and with good reason: Mr. Vizcarra now knows he is under

Government surveillance, and if released, he would be actively monitored by GPS; Mr. Vizcarra would be living at a former coworker's residence and there is no evidence that the former coworker is likely to allow Mr. Vizcarra to store drugs in the home; and the Probation Office would regularly visit Mr. Vizcarra's residence to ensure compliance with the conditions of release. In addition, the Government does not allege that Mr. Vizcarra is violent or has used any weapons in furtherance of his alleged drug trafficking. Indeed, Mr. Vizcarra has no criminal history, and this is Mr. Vizcarra's "first contact with law enforcement." (Dkt. No. 98 at 6.) Therefore, even considering the presumption of detention, the Government has failed to prove by clear and convincing evidence that no set of conditions could reasonably assure the community's safety if Mr. Vizcarra were to be released.

### E.   Flight Risk

The Court agrees with the Government that there is a significant risk that Mr. Vizcarra will flee. First, the evidence against Mr. Vizcarra is strong, and Mr. Vizcarra faces a substantial prison sentence if convicted. The Government discovered massive quantities of methamphetamine, heroin, and fentanyl at Mr. Vizcarra's residence, and some of these drugs were packaged for resale. (*See* Dkt. No. 96 at 1.) When law enforcement interviewed Mr. Vizcarra, he admitted he knew about the methamphetamine and heroin in the residence. (*See id.* at 8.) If convicted, Mr. Vizcarra faces a mandatory minimum of ten years and a maximum of life in prison. *See* 21 U.S.C. § 841(b)(1)(A).

Second, Mr. Vizcarra has extensive ties to Mexico and very few ties to the United States and to this district. Mr. Vizcarra was born in Phoenix and moved to Mexico when he was one. (Dkt. No. 8 at 2.) He stayed there for the next twenty years, aside from a nine-month stretch when he returned to Arizona. (*Id.*) Since then, Mr. Vizcarra has lived in Washington "off and on since 2016," and he currently lives in Tacoma with his girlfriend and her two-year-old daughter. (*Id.*) Since he has been in Washington, Mr. Vizcarra has returned to Mexico for 2–4 months every winter, most recently returning in February 2020. (*Id.*) His two children (ages 3 and 5), his

mother, and his brothers all live in Mexico. (*Id.*) Mr. Vizcarra notes that he also has family members in the United States, but he does not provide any details about which family members, the nature of their relationship, or where they live. (*See* Dkt. No. 98 at 8–9.)

In light of the evidence against Mr. Vizcarra, the significant prison sentence he faces if convicted, and his extensive ties to Mexico and minimal ties to the United States, the Court concludes that the Government has proved by a preponderance of the evidence that there is a significant risk Mr. Vizcarra could flee.

But the Government's burden is not just to show that Mr. Vizcarra is a flight risk; it is to show that no set of conditions can reasonably assure his appearance. *See* 18 U.S.C. § 3142(e)(1). The Government has made little effort to do so. Although the Government asserts that "GPS ankle monitors can be easily removed," (Dkt. No. 96 at 17), it does not provide any evidence in support of that claim. For example, the Government does not provide any evidence about how frequently GPS ankle monitors are removed, how frequently defendants who succeed in removing their GPS ankle monitors fail to appear, the characteristics of the defendants that have failed to appear despite GPS ankle monitors and a comparison with Mr. Vizcarra, or any other evidence the Court could use to evaluate its claim. To be sure, the Government is undoubtedly correct that GPS ankle monitors can be removed in some circumstances (even if not "easily") and they are not a "guarantee against flight." (*Id.*) But the Court is not required to find that special conditions will *guarantee* Mr. Vizcarra's appearance before releasing him. *See United States v. Orta*, 760 F.2d 887, 889–91 (8th Cir. 1985). Instead, the conditions must only "reasonably assure" his appearance. *Id.*

The Government's briefing cites hypothetical changes to Mr. Vizcarra's conditions of release that it argues would not reasonably assure Mr. Vizcarra's appearance, such as the use of SMARTLINK monitoring, which does not allow for continuous location tracking and would monitor Mr. Vizcarra's location using his mobile phone rather than a GPS ankle monitor. (*See* Dkt. No. 96 at 11, 17.) But the Court cannot detain Mr. Vizcarra now based on hypothetical

changes to the special conditions that may or may not be made in the future. If the conditions of Mr. Vizcarra's release are modified in such a way that the Government believes will not reasonably assure Mr. Vizcarra's appearance, the Government may object to those conditions at that time.

The Government also argues that the Government's seizure of Mr. Vizcarra's travel documents cannot prevent his escape to Mexico because Mr. Vizcarra could cross the border illegally and because Mr. Vizcarra recently changed his name from "Ricardo Barrazza Vizcarra" to "Ricardo Vizcarra," so there is "literally no way" the Government can determine whether Mr. Vizcarra possesses other identification he could use to travel. (*See* Dkt. Nos. 96 at 17, 8 at 2.) But the Government fails to account for the fact that Mr. Vizcarra's identification documents were seized *and* he will be actively monitored by GPS, meaning that the Probation Office could detect him traveling south to Mexico. The Court finds that these conditions, considered together, will reasonably assure Mr. Vizcarra's appearance.

Mr. Vizcarra's name change does not affect the Court's conclusion. There is no evidence that Mr. Vizcarra changed his name in an attempt to evade law enforcement, and, in fact, Mr. Vizcarra voluntarily disclosed the name change to the Probation Office. (*See* Dkt. No. 8 at 2.) Further, the Government does not explain how Mr. Vizcarra changing his name from "Ricardo Barrazza Vizcarra" to "Ricardo Vizcarra" is likely to prevent law enforcement from determining what identification Mr. Vizcarra possesses or impair the Probation Office's ability to supervise him.

In sum, even considering the presumption of detention, the Government has failed to prove by a preponderance of the evidence that there is no set of conditions that will reasonably assure Mr. Vizcarra's appearance.

F.      **Reliance on Probation Office's Findings Regarding Residence**

In addition to the substantive arguments discussed above, the Government argues, without citing any authority, that Judge Peterson erred by relying on the Probation Office's

interview with Mr. Vizcarra's former coworker in determining that the former coworker's home is a suitable residence for Mr. Vizcarra. (*See* Dkt. No. 96 at 17–18.) Instead, the Government argues that Judge Peterson was required to personally examine the former coworker—or at least allow the Government to do so—to determine whether his home is suitable. (*See id.*) The Court disagrees.

It is well established that the rules of evidence do not apply to pretrial detention hearings, *see* 18 U.S.C. § 3142(f), and the Court may rely on evidence collected and presented by the Probation Office, *see* 18 U.S.C. § 3153(c)(1). Indeed, a Pretrial Services Report is required so "'that the court receives the most complete information possible' to make informed pretrial decisions." *United States v. Santa*, 769 F. App'x 450, 452 (9th Cir. 2019) (quoting H.R. Rep. No. 97-792, at 9 (1982) (Conf. Rep.), *as reprinted in* 1982 U.S.C.C.A.N. 2393, 2395).

The Government concedes that the Court may rely on a Pretrial Services Report "in certain circumstances" but argues that in this case the Court must cross-examine Mr. Vizcarra's former coworker or allow the Government to do so. (Dkt. No. 96 at 17–18.) But the Government does not cite any authority that holds that the Government is entitled to cross-examine witnesses the Probation Office interviews to prepare the Pretrial Services Report. The Bail Reform Act provides *defendants* with a limited right to cross-examine "witnesses who appear at the hearing" but does not, on its face, provide a similar right to the Government. *See* 18 U.S.C. § 3142(f). And even "[t]he accused has no right to cross-examine adverse witnesses who have not been called to testify." *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986). Thus, to accept the Government's position would require the Court to hold that the Bail Reform Act provides the Government with a right to cross-examination and that its right is broader than the presumptively innocent defendant's because it includes the power to compel adverse witnesses to testify so that the Government may cross-examine them. In the absence of any authority from the Government, the Court declines to do so.

//

**G.      Modification of Conditions**

While the Court does not revoke Judge Peterson's decision to release Mr. Vizcarra subject to special conditions, the Court concludes that it must modify one condition to reasonably assure Mr. Vizcarra's appearance. The current appearance bond prohibits Mr. Vizcarra from "travel[ing] outside the United States or as directed by Pretrial Services." (Dkt. No. 95 at 1.) This condition allows Mr. Vizcarra to travel anywhere in the United States, including to Arizona or other locations near the United States-Mexico border. In light of Mr. Vizcarra's significant ties to Mexico and the risk that he may attempt to flee, the Court concludes that Mr. Vizcarra's travel should be restricted to this district to reasonably assure his appearance.

A revised appearance bond is attached to this order. Counsel for Mr. Vizcarra is DIRECTED to obtain Mr. Vizcarra's signature or sign on behalf of Mr. Vizcarra and submit the signed document to Judge Coughenour's Courtroom Deputy. Then the Court will promptly sign the appearance bond and file it on the record, thereby formally ordering Mr. Vizcarra's release.

**III.      CONCLUSION**

For the foregoing reasons, the Court DENIES the Government's motion to revoke Judge Peterson's order releasing Mr. Vizcarra before trial (Dkt. No. 96) and MODIFIES Mr. Vizcarra's appearance bond (Dkt. No. 95) so that his travel is restricted to this district or as directed by Pretrial Services.

DATED this 14th day of October 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE